No. 11,057.

THE STATE OF LOUISIANA EX REL. W. C. ABBOTT VS. A. W. O. HICKS, JUDGE, ET AL.

1. Relator, prosecuted for a violation of Act No. 111 of 1890, requiring officers of railway companies to assign passengers to coaches or compartments set aside for the use of the race to which they belong, pleaded to the jurisdiction of the court on the ground that the person referred to in the information was an interstate passenger to whom the statute did not and could not constitutionally apply, and that the act charged was not, therefore, a violation of any law. A demurrer to the plea was not sustained by the respondent judge.

State ex rel. Abbott vs. Judge et al.

2. Upon the facts presented on its face, the plea to the jurisdiction was good, and a demurrer thereto could not be lawfully sustained.

3. The jurisprudence of the Supreme Court of the United States, which, in such a matter, is paramount authority, conclusively shows that such a statute is a regulation of commerce, which, though valid as applied to domestic passengers, is unconstitutional as applied to interstate passengers, being in violation of the exclusive right vested in Congress to regulate commerce between the States.

4. The judgment sustaining the demurrer is pronounced null and void, and respondent is prohibited from further proceeding until the plea to the jurisdiction is heard and determined on the merits.

APPLICATION for Prohibition and *Certiorari*.

*Percy Roberts* for the Relator cited:

The case of Pardee, 19 Central Law Journal, 330; the case of Gaylord, decided by the Supreme Court of Kentucky, 26 American Law Register, pp. 320, 359 and 312; the case of Tracy, decided by the City Court of New York, 67 Howard Practice Reports 154; the case of Stearn, E. & A. Railroad Cases, Vol. 21, p. 443; the case of Carpenter, 3 R. R. Corp. Law Journal, 32; the case of Handy, 63 Mississippi, 609; the case of Whitney, 143 Massachusetts, 243 (also reported in N. E. Reports 619); the case of Searles, 45 Federal Reporter, 330; the case of Hills, 72 Iowa, 223; the case of Roy, 102 U. S. 451; and others too numerous to mention.

*J. Henry Shepherd*, District Attorney, for the Respondent:

1. Penal statutes, like all others, are to be construed as not to work an absurdity or defeat their own purpose, or to be eluded. The Carolina, 9 Wheaton, 381; Malone's Criminal Briefs, p. 160.

2. The police power of the States is always held to be within their control, not subject to interference from the national government. This power extends to the protection of the lives, health and property of the citizens, and to the preservation of good order and the public morals. Beer Company vs. Mass., 97 U. S. 25-33.

3. For the purpose of carrying out a contract in carrying passengers by a railroad company, the conductor and porter of a sleeping car company whose car is attached to a railway train are, in law, servants and employés of the railroad company. Williams vs. Palace Car Company, 40 An. 417.

4. Equality of accommodations does not mean identity of accommodations. Logwood and Wife vs. Memphis & Charleston Railroad Company, 23 Federal Reporter, 318.

The case of Hall vs. Decuir (5 Otto, 95 U. S. 490) does not decide that the States have no power to make regulations for separate accommodations for white and colored travelers, but does hold that carriers must furnish accommodations equal in quality and convenience.

5. The Interstate Commerce Act provides the giving of any undue or unreasonable preference as between persons or localities or kinds of traffic, or the subjecting of any one of them to undue or unreasonable prejudice or disadvantage is declared to be unlawful. See First Annual Report of Interstate Commerce Commission, 1887, p. 10.

6. Colored people may properly be assigned separate cars on equal terms. Such a separation of the races does not create undue prejudices or unjust preference. Councill vs. Western & Atlantic Railroad Company; Heard vs. Georgia Railroad Company; See points decided, Fifth Annual Report of Interstate Commerce Commission, p. 155.

7. Act 3 of the Acts of the General Assembly of Louisiana, 1890, is an act to promote the comfort of passengers on railway trains. It is a police regulation and does not discriminate, neither subjects any person to undue or unreasonable prejudice.

8. Classification upon color does not abridge any of the privileges or immunities of a colored man as a citizen of the United States, nor deny him the equal protection of the law of the State. Ward vs. Flood (1874), 48 Cal, 36; Roberts vs. The City of Boston (1850), 5 Cush. (Mass.) 198; State ex rel. etc., vs. Cincinnati et als. (1850), 19 Ohio 178; Van Camp vs. Board of Education of the Incorporated Village of Logan (1859), 9 Ohio St. 406; People vs. Board, etc., of Detroit (1869), 18 Mich. 400; State ex rel. Stoutmeyer vs. Duffy et als. (1872), 7 Nev. 342; United States vs. Buntin (1882), U S. C. Ct. S. D. Ohio, 10 Fed. Rep. 730.

---

The opinion of the court was delivered by

FENNER, J. Relator was prosecuted for a violation of Act No. 111 of 1890, entitled "An act to promote the comfort of passengers on railway trains; requiring all railway companies carrying passengers on their trains, in this State, to provide equal but separate accommodations for the white and colored races, by providing separate coaches or compartments so as to secure separate accommodations; defining the duties of the officers of such railways; directing them to assign passengers to the coaches or compartments set aside for the use of the race to which such passengers belong; authorizing them to refuse to carry on their trains such passengers as may refuse to occupy the coaches or compartments to which he or she is assigned; to exonerate such railway companies from any and all blame or damages that might proceed from such refusal; to prescribe penalties for all violations of this act," etc.

Relator appeared and filed, *in limine*, a plea to the jurisdiction of the court, coupled with a motion to quash the information, wherein he alleged and set forth, in substance, the following facts, viz.:

1. That the act charged in the information was committed by him exclusively as an officer of Pullman's Palace Car Company, in charge only of one Pullman car attached to a train on the Texas & Pacific Railway Company.

2. That the negro, whom the information charged him with admitting into said car, was an interstate passenger, that is, a pas-

senger traveling from a point in the State of Louisiana to his destination in the State of Texas.

And upon these alleged facts he propounded the following propositions of law, viz.:

1. That the Act No. 111 did not, under its terms, apply to the Pullman's Palace Car Company, or to its cars, or to its officers or employees.

2. That said Act No. 111 was not intended to apply and did not apply to any passenger traffic or commerce except such as is carried on exclusively within the State of Louisiana, and does not embrace or cover the acts charged in the information, which related exclusively to an interstate passenger.

3. That if the said act should be held to apply to interstate passengers, then the same is null and void as violating clause 3 of Sec. 8 of Art. 1 of the Constitution of the United States, which confers upon Congress alone the power "to regulate commerce with foreign nations and among the States and with the Indian tribes."

The district attorney, on behalf of the State, met the plea and motion by a demurrer on the ground that "the matters therein set forth are insufficient in law;" which demurrer the respondent judge sustained and overruled the plea and motion.

The case being unappealable and susceptible of no other remedy, relator applies for relief by certiorari and prohibition, his right to which is not questioned by respondent and does not seem to admit of question. State ex rel. Walker vs. Judge, 39 An. 134.

For the purposes of the demurrer, the facts set forth in the plea stand as admitted.

As we said in the case just quoted, "if the law for the violation of which relators are being prosecuted is unconstitutional, then it is not a law and no court can have power or jurisdiction to arraign, try and punish a citizen who is not charged with the violation of law."

We shall pretermit consideration of the first ground relating to the applicability of the statute to the Pullman Company, its cars and employees, which involves a mere question of statutory construction, and shall confine ourselves to those arraigning the statute as an unauthorized regulation of interstate commerce.

Thus considered, the case presents two sharply defined questions, viz.:

1. Does the statute apply to interstate passengers or is it con-

fined in its application to passengers traveling exclusively within the borders of the State?

2. If the statute does apply to interstate passengers is it such a regulation of commerce between the States as violates the exclusive power over that subject conferred on Congress by the Constitution of the United States?

These questions are so closely connected that they may be considered together.

The State of Mississippi has a statute which we have very carefully compared with the statute of Louisiana involved in this case, and find the two to be so similar as to admit of not the least distinction as to their true meaning and effect, except that the Mississippi act subjected the railroad companies failing to supply the separate accommodations required, as well as the conductor, to prosecution as for a misdemeanor and to fine in case of conviction. Under this provision a railroad company was prosecuted for failure to comply with the act, and it defended on the ground that the act was a regulation of commerce between the States and unconstitutional. The Supreme Court of Mississippi, in passing upon that case, held as follows:

"It is assumed by counsel for appellant that the act under consideration was intended to regulate not only the transportation of passengers taken up and set down within the State, but those taken up within the State to be carried without, those taken up without to be brought within, and those taken up without to be carried across the State and into other States.

"An examination of the record shows that the omission for which the indictment was found was the neglect to provide the 'separate' accommodation required by paragraph 1 of the act, and not for failing to assign to such separate car or compartment interstate travelers upon appellant's train. We are not, therefore, called upon to determine whether the legislation in question would be valid if applied to persons other than those taken up within the State to be set down within it.

\*          \*          \*          \*          \*          \*          \*          \*

" We concede it to be settled, as stated by counsel for appellant, that transportation of persons is as much commerce as transportation of property, and as a corollary that the interstate transportation of persons is interstate commerce, and that the State may not

NEW ORLEANS, MAY, 1892. 775.

State ex rel. Abbott vs. Judge et al.

regulate such commerce, since it is national in its character and requires uniformity of regulation. It may also be conceded that absence of legislation by Congress on the subject is indicative of its will that such commerce shall be free and untrammeled. The question returns, whether the act under consideration is a regulation of interstate commerce, and upon its solution hinges the controversy.

\*  \*  \*  \*  \*  \*  \*  \*

"It is a matter of common knowledge that there are at present many State commissions for the regulation of State commerce, and one by the general government for the regulation of that between the States. Each occupies a field from which the other is excluded, and each is essential, or deemed so to be, to full control of the commerce of the country. By what authority can the transportation of domestic travelers be controlled, if not by that of the State? Congress has no jurisdiction over the subject, it being confined to commerce 'with foreign nations, and among the States, and with the Indian tribes.' Suppose Congress should deem it advisable to enact a law similar to our statute for the regulation of interstate transportation of passengers, could it be contended that it controlled as to passengers taken up and set down within a State?

"But how does the statute interfere with interstate commerce, if it be true that it has no application save to those traveling wholly within the State?"

The court proceeded to show that the duty imposed by the statute on railway companies to provide separate accommodations did not involve the necessity of assigning interstate passengers to such separate cars or compartments and therefore involved no regulation of interstate commerce, but might nevertheless be validly required for the separation of purely domestic travelers. And the opinion concludes as follows:

"It would seem to follow that since the transportation of passengers and of property stand upon the same footing, regulations of property within State limits being valid, regulations touching passengers of the same character, i. e., domestic travelers, are also valid." Railway Co. vs. State, 66 Miss. 662.

This case was appealed to the Supreme Court of the United States, and that court, commenting on its decision in the case of Hall vs. Decuir, 95 U. S. 485, said:

"So the decision was by its terms carefully limited to those cases

in which the law practically interfered with interstate commerce. Obviously, whether interstate passengers of one race should, in any portion of their journey, be compelled to share |their cabin accommodations with passengers of another race, was a question of interstate commerce, and to be determined by Congress alone. In this case, the Supreme Court of Mississippi held that the statute applied solely to commerce within the State; and that construction being the construction of the statute of the State by its highest court must be accepted as conclusive here. If it be a matter respecting wholly commerce within a State and not interfering with commerce between the States, then, obviously, there is no violation of the commerce clause of the federal Constitution." Railway Co. vs. State, 133 U. S. 587.

The terms of the decision leave no doubt that the court regarded the statute as unconstitutional if applied to interstate passengers, and only upheld it because construed by the Supreme Court of Mississippi as applicable only to domestic passengers.

The case of Hall vs. Decuir, above referred to, involved a statute of this State, the act of February 23, 1869, which required carriers to give all passengers equal rights and accommodations without distinction of race or color, and the Supreme Court held that as applied to interstate passengers, it was an unconstitutional regulation of interstate commerce.

In another case that court applied like principles to a State statute relative to the carriage of goods, saying:

" If the Illinois statute could be construed to apply exclusively to contracts for a carriage which begins and ends within the State, disconnected from a continuous transportation through or into other States, there does not seem to be any difficulty in holding it to be valid. For instance, a contract might be made to carry goods for a certain price from Cairo to Chicago, or from Chicago to Alton. The charges for these might be within the competency of the Illinois Legislature to regulate. The reason for this is that both the charge and the actual transportation in such cases are exclusively confined to the limits of the territory of the State, and is not commerce among the States, or interstate commerce, but is exclusively commerce within the State. So far, therefore, as this class of transportation, as an element of commerce, is affected by the statute under consideration, it is not subject to the constitutional provision concerning commerce among the States.    *    *    *

NEW ORLEANS, MAY, 1892. 777

State ex rel. Abbott vs. Judge et al.

"It might admit of question whether the statute of Illinois, now under consideration, was designed by its framers to affect any other class of transportation than that which begins and ends within the limits of the State. The Supreme Court of Illinois having in this case given an interpretation which makes it apply to what we understand to be commerce among the States, although the contract was made within the State of Illinois, and a part of its performance was within the same State, we are bound, in this court, to accept that construction.    *    *    *

"Of the justice or propriety of the principle which lies at the foundation of the Illinois statute it is not the province of the court to speak. As restricted to a transportation which begins and ends within the limits of the State it may be very just and equitable, and it certainly is the province of the State Legislature to determine that question. But when it is attempted to apply to transportation through an entire series of States a principle of this kind, and each one of the States shall attempt to establish its own rates of transportation, its own methods to prevent discrimination in rates, or to permit it, the deleterious influence upon the freedom of commerce among the States and upon the transit of goods through those States can not be over-estimated. That this species of regulation is one which must be, if established at all, of a general and national character, and can not be safely and wisely remitted to local rules and local regulations, we think is clear from what has already been said. And if it be a regulation of commerce, as we think we have demonstrated it is, and as the Illinois court concedes it to be, it must be of that national character, and the regulation can only appropriately exist by general rules and principles, which demand that it should be done by the Congress of the United States under the commerce clause of the Constitution.

"The judgment of the Supreme Court of Illinois is, therefore, reversed, and the case remanded to the court for further proceedings in conformity with this opinion." Wabash vs. State, 118 U. S. 557. See also Coe vs. Erroll, 116 U. S. 517.

These decisions leave no room for question that the jurisprudence of the United States Supreme Court holds such statutes as the one here presented to be only valid in so far as they apply to domestic transportation of passengers or goods, and that, as applicable to interstate passengers or carriage they are regulations of interstate

commerce prohibited to the States by the Constitution of the United States.

As to such purely federal questions the authority of that court is paramount, and we are bound to acknowledge and obey it.

The dilemma is thus presented that either the statute has no application to interstate passengers, or if it has, that it is, as to them, unconstitutional and void.

In either case, upon the facts presented on the face of the plea to the jurisdiction, the plea was good, and the demurrer thereto was wrongfully sustained.

But while the facts alleged are taken as true for the purposes of the demurrer, it does not follow that they will be established on trial of the merits of the plea.

Relator is simply entitled to a setting aside of the judgment sustaining the demurrer, and to a trial of his plea upon the merits.

It is therefore ordered that the judgment of the court below, sustaining the demurrer to the plea to the jurisdiction be declared null, void and of no effect, and that the writ of prohibition herein issued be modified so as to prohibit the respondent from further proceedings herein until after trial of the plea on its merits and judgment thereon, and as thus modified it is now made peremptory.